## DOUDS v. ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AMERICAN FEDERATION OF MUSICIANS, AFL et al.

United States District Court,
S. D. New York.
May 27, 1954.

Sidney D. Goldberg, Washington, D. C., Harold Richman, New York City, for petitioner.

Ashe & Rifkin, New York City, David I. Ashe, George Rifkin, New York City, of counsel, for respondents.

Donovan, Leisure, Newton & Irvine, New York City, Granville Whittlesey, Jr., O. C. Doering, Jr., John E. Tobin, New York City, of counsel, for Gotham Broadcasting Co.

CONGER, Judge.

This matter came on to be heard upon the verified petition of Charles T. Douds, Regional Director of the Second Region of the National Labor Relations Board (herein called the Board), for a temporary injunction, pursuant to Section 10(*l*) of the National Labor Relations Act, as amended 29 U.S.C.A. § 160(*l*) (herein called the Act), pending the final adjudication of the Board with respect to the matters set forth in said petition, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed therein. Respondents appeared and answered and a hearing on the issues raised by the petition was duly held on May 19, 1954. All parties were afforded full opportunity to be heard, examine and cross-examine witnesses, present evidence bearing on the issues, and to argue and submit briefs on the evidence and the law. The Court has fully considered the petition, answer, evidence, and argument and briefs of counsel. Upon the entire record, the Court makes the following:

Findings of Fact

1. Petitioner is Regional Director of the Second Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. Respondent Associated Musicians of Greater New York, Local 802, American Federation of Musicians, AFL (herein called Local 802), an unincorporated association, is a labor organization within the meaning of Section 2(5), 8(b) and 10(*l*) of the Act, and at all times material herein has been and is now engaged, within this judicial district, in transacting business and in promoting and protecting the interests of its employee members.

3. Respondent Al Manuti is, and at all times material herein has been, president of respondent Local 802 and has been engaged within this judicial district in promoting and protecting the interests of employee members of respondent Local 802.

4. On or about April 16, 1954, Gotham Broadcasting Corporation, pursuant to the provisions of the Act, filed a charge with the Board alleging that respondents have engaged in, and are engaging in unfair labor practices within the meaning of Section 8(b), subsection (4) (A) of the Act.

5. Said charge was thereafter referred to petitioner as Regional Director of the Second Region of the Board for investigation. Petitioner has investigated said charge.

6. There is, and petitioner has reasonable cause to believe that:

(a) Gotham Broadcasting Corporation (herein called Gotham), a Delaware corporation, has its principal office in the County and State of New York, and owns and operates radio broadcasting station WINS, with studios located at 28 West 44th Street in the County and City of New York and a transmitter at Lyndhurst, New Jersey. In the conduct of its said business, Gotham annually furnishes services valued at more than $750,000 to corporations, companies, and persons engaged in interstate commerce. The broadcasts of WINS reach audiences in the States of New York, New Jersey and Connecticut. Gotham also furnishes programs which are broadcast from radio stations in other States.

(b) Respondent Local 802 represents musicians formerly employed at WINS Broadcasting Studios at 28 W. 44th Street, in the County and State of New York, and since about April 1, 1954, has been on strike against Gotham over terms of a collective bargaining agreement and has been picketing Gotham's said broadcasting studio.

(c) Daniel R. Topping and Del E. Webb, co-partners under the firm name and style of New York Yankees (herein called Yankees), are the owners and operators of the baseball team known as the New York Yankees and the lessees of the ball park in the County of Bronx, State of New York, known as the Yankee Stadium. Yankees, together with River Operating Company, Inc. (herein called River), and Allied Maintenance Corporation (herein called Allied), operate and maintain the Yankee Stadium. River has the radio broadcasting rights for home games of the New York Yankees.

(d) Harry M. Stevens, Inc. (herein called Stevens) and Yankee Stadium Club, Inc. (herein called Stadium Club) operate food, refreshment, restaurant and other concessions in said Yankee Stadium.

(e) Parkway Sporting Club, Inc. (herein called Parkway) operates the Eastern Parkway Rink in the County of Kings, City of New York, for holding boxing exhibitions, and leases food, refreshment and other concessions in said Rink to various firms (herein called Parkway concessionaires).

(f) Exhibitions at Yankee Stadium and Eastern Parkway Rink are attended, in the course of their employment, by employees of various television and radio broadcasting companies, newspapers, wire services, photographers, telegraph companies, and of other employers.

(g) At no time material herein has there been any labor dispute between the respondents herein and any of the employers named in subparagraphs (c), (d), (e) and (f).

(h) River has contracted with Gotham to furnish certain radio broadcasting facilities and personnel for the broadcasting of home games of the New York Yankees from the Yankee Stadium.

(i) Parkway has contracted with Gotham to furnish certain radio broadcasting facilities and personnel for the broadcasting of boxing exhibitions from Eastern Parkway Rink.

(j) No member of respondent Local 802 is, or has been at any time material herein, employed by Gotham at Yankee Stadium or Eastern Parkway Rink in connection with broadcasts over WINS from said places.

(k) On April 10, 11, 15, 18, 21, 27, 29, 30, May 1, 2, 5, 6, 7 and 9, respondents, in connection with their dispute with Gotham at the broadcasting studios of Station WINS, picketed the Yankee Stadium from about 11:30 o'clock a. m. until about 2:30 o'clock p. m.

(l) On April 12, 1954, respondents, in connection with their dispute with Gotham at the broadcasting studios of Station WINS, picketed the Eastern Parkway arena from about 7:00 o'clock p. m. until about 7:40 o'clock p. m.

(m) The picketing set forth in Findings of Fact 6(k) and (*l*) constitute inducement and encouragement addressed by respondents to the employees of the employers set forth in Findings of Fact 6(c), 6(d), 6(e) and 6(f) to engage in strikes or concerted refusals in the course of their employment to use, process, transport, or otherwise handle or work on goods, articles, materials or commodities, or to perform services for their respective employers.

(n) An object of respondents' conduct set forth in Findings of Fact 6(k), 6(*l*) and 6(m) above was and is to force or require said River and Parkway to cease doing business with Gotham, and to force or require the employers named in Findings of Fact 6(c), 6(d), 6(e) and 6(f), and other employers who normally do business with River and Parkway, to cease doing business with River or Parkway.

(o) As a result of the picketing set forth in Finding of Fact 6(*l*), Parkway has ceased to do business with Gotham and has not permitted Station WINS to broadcast boxing exhibitions from Eastern Parkway Arena.

(p) The acts and conduct of respondents set forth in Findings of Fact 6(k), 6(*l*), 6(m) and 6(n) above, occurring in connection with Gotham's operations, have a close, intimate, and substantial relation to trade, traffic and commerce among the several states, and tend to lead and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

7. It may be fairly anticipated that, unless restrained, respondents will repeat or continue the acts and conduct set forth in Findings of Fact 6(k), 6(*l*) and 6(m) above, or in similar or like conduct with objects thereof as set forth in Finding of Fact 6(n).

### Conclusions of Law

1. Gotham is engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

2. Respondent Local 802 is a labor organization within the meaning of Sections 2(5), 8(b) and 10(*l*) of the Act.

3. Respondent Manuti is an agent of respondent Local 802 within the meaning of Sections 2(13), 8(b) and 10(*l*) of the Act.

4. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and is empowered to grant injunctive relief under Section 10(*l*) of the Act.

5. There is and petitioner has reasonable cause to believe that respondents have engaged in and are engaging in an unfair labor practice within the meaning of Section 8(b), subsection (4)(A) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act and that a continuation of such practices will impair the policies of the Act as set forth in Section 1(b) thereof.

6. To preserve the issues for the determination of the Board as provided in the Act, and to avoid irreparable injury to the policies of the Act and to the public interest, it is appropriate, just, and proper that, pending the final adjudication of the Board with respect to this matter, respondents, their officers, agents, members, servants, employers, and all persons acting in concert or participation with them, be enjoined and restrained from the commission of the acts and conduct set forth in Findings of Fact 6(k), 6(*l*), 6(m) and 6(n) above, acts in furtherance, or support thereof, and like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from respondents' acts and conduct in the past.

### Discussion

Respondents' arguments are not novel, neither are they convincing. It is clear that (1) the "ambulatory situs" rule set forth in Schultz Refrigerated Service, Inc., 87 N.L.R.B. 502, and Moore Dry Dock Co., 92 N.L.R.B. 547, is inapplicable since (a) Yankee Stadium and East-

ern Parkway Rink are never the places of respondents' employment and (b) Gotham has a situs in New York City which respondents may and do picket, and are picketing. Western Inc., 93 N.L.R.B. 336; Washington Coca Cola Bottling Works, Inc., 107 N.L.R.B. 104; Elliott v. General Drivers, etc., D.C.S.D. Tex., 123 F.Supp. 125, per Connally, J.; (2) the success of respondents' efforts is not a prerequisite to violation of § 8(b) (4) (A) but rather "It is sufficient if they induce or encourage concerted conduct by the employees of a neutral employer to engage in such a strike, although they may fail in their efforts." N.L.R.B. v. Denver Building & Const. Trades Council, 10 Cir., 193 F.2d 421, 424 and cases cited.

I have signed the decree submitted by petitioner.